573 A.2d 255

**RANDOLPH VINE ASSOCIATES**

**v.**

**ZONING BOARD OF ADJUSTMENT OF PHILADELPHIA**

**Appeal of CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 1989.

Decided April 12, 1990.

454

Marjorie Stern Jacobs, Divisional Deputy City Sol., for appellant.

Robert D. Lane, Jr., with him, Janet R. Seligman, Fox, Rothschild, O'Brien & Frankel, for appellee.

Before BARRY, COLINS, (P.) and SMITH, JJ.

SMITH, Judge.

The City of Philadelphia (City) appeals from two orders issued by the Court of Common Pleas of Philadelphia County. The first order reversed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board) and ordered that Randolph Vine Associates (Randolph Vine) be permitted to continue its use of an outdoor advertising sign. The second order denied as moot preliminary objections filed by the Board to Randolph Vine's complaint in mandamus. The trial court's orders are reversed and this case is remanded for further proceedings.

I

Randolph Vine is the owner of real estate located at 220–228 Wood Street, Philadelphia, Pennsylvania. In 1985, Randolph Vine entered into a lease agreement with Stait Outdoor Advertising Company (Stait) whereby Stait was granted the right to erect and utilize an outdoor advertising sign on the building at 220–228 Wood Street. Stait thereafter applied to the City's Department of Licenses and Inspections (Department) for a zoning permit to erect the sign which was denied pursuant to Section 14–1604 of the Philadelphia Zoning and Planning Code which prohibits outdoor advertising signs in the vicinity of the Ben Franklin Bridge and its approachways. Stait then applied to the Board for a variance to erect a roof-mounted sign, seventy-eight feet from the ground with the face of the sign measuring twenty feet by sixty feet. The Board granted Stait a variance for the sign and on April 29, 1985 issued zoning/use permit no. 331154 (permit no. 331154). On October 4, 1985, the Department issued a building permit to Stait for erection of a roof-mounted outdoor advertising sign having a face measuring twenty by sixty feet with an estimated cost of $40,000 according to Stait. Stait thereafter revised its plans to provide for a pole-supported sign with the pole to be erected in the enclosed courtyard of the building at 220–228 Wood Street. An amended building permit was issued by the Department on October 7, 1986 pursuant to Stait's application which indicated that revised drawings were being submitted.

Randolph Vine and Stait terminated their lease agreement on December 1, 1986, and Randolph Vine constructed the pole-supported sign at a cost of $150,000. During construction of the sign, an inspector from the Department visited the construction site at least once. In February of 1987, Randolph Vine received a violation notice from the Department instructing it to "cease maintaining" the pole-supported sign for the reason that it was not in accordance with permit no. 331154 issued on April 29, 1985. Randolph Vine appealed this violation notice to the Board arguing

that the sign had been lawfully erected pursuant to the amended building permit issued on October 7, 1986; that Randolph Vine had accrued vested rights in the amended building permit; and that the sign was in fact a roof sign within the meaning of permit no. 331154. During the hearing on the appeal of the violation notice, the Board agreed to hear testimony in the alternative on Randolph Vine's claim of entitlement to a variance for the amended sign drawings.

On August 10, 1987, the Board issued a decision stating that it had unanimously voted to deny the appeal. No mention was made of Randolph Vine's request in the alternative for a variance. Randolph Vine appealed this decision to the trial court,[1] and on February 5, 1988, over six months after the hearing, the Board issued its findings of facts and conclusions of law. Again the Board failed to address Randolph Vine's request for a variance and stated erroneously in Conclusion of Law No. 11 that inasmuch as Randolph Vine had merely appealed the violation notice and had not requested a variance, no evidence had been taken by the Board pertaining to this issue. The Board did, however, find that the City Planning Commission had recommended against a variance at the hearing for the reason that no hardship had been established.[2]

On July 22, 1988 Randolph Vine filed a second action, consolidated with the original appeal, requesting that a writ of mandamus be issued compelling the issuance of a variance due to the Board's failure to rule on this matter. The Board filed preliminary objections to the mandamus action asserting essentially that Randolph Vine was not entitled to a deemed approval of its request for a variance. Following oral argument on the consolidated cases, the trial court

1. Insofar as the Board had no standing to appeal any order which might be entered by the trial court, the City was properly granted leave to intervene. *Landsdowne Board of Adjustment's Appeal,* 313 Pa. 523, 170 A. 867 (1933).

2. Counsel for the Board and the City conceded at the trial court level that the Board should have ruled on Randolph Vine's entitlement to a variance.

entered the two orders which are the subject of this appeal. In its opinion in support of the orders, the trial court found that the Board's failure to address the variance request in its findings of facts and conclusions of law was contrary to Section 8 of the Zoning Enabling Act of 1929 [3] which requires the Board to decide appeals within a reasonable time. Observing that one and one-half years had passed since the hearing and the Board had yet to address this issue, the trial court concluded that the variance should be deemed approved.

## II

This Court's scope of review in a mandamus action is to determine whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support its findings. *Township of Nether Providence Appeal*, 85 Pa.Commonwealth Ct. 104, 481 A.2d 692 (1984). Mandamus is an extraordinary remedy which will only lie to compel performance of a ministerial act or mandatory duty where the petitioning party has a clear legal right and respondent has a corresponding duty and where no other appropriate remedy exists. *Giddings v. Tartler (Pennsylvania Board of Probation and Parole)*, 130 Pa.Commonwealth Ct. 175, 567 A.2d 766 (1989). Mandamus has been specifically approved by this Court as an available remedy for the effectuation of relief under the forty-five day rule of Section 908(9) of the Pennsylvania Municipalities Planning Code [4] (MPC) which requires that the Board render written findings within forty-five days of the last hearing. *Bucks County Housing Development Corp. v. Plumstead Township*, 45 Pa.Commonwealth Ct. 532, 406 A.2d 832 (1979).

The deemed approval provisions of Section 908(9) of the MPC, however, are inapplicable to the matter *sub judice*. Inasmuch as Philadelphia is a city of the first class, it is not governed by provisions of the MPC. *Tuckfelt v.*

3. Act of May 6, 1929, P.L. 1551, *as amended*, 53 P.S. § 14759.

4. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10908(9).

*Zoning Board of Adjustment of the City of Pittsburgh,* 80 Pa.Commonwealth Ct. 496, 471 A.2d 1311 (1984). In *Tuckfelt,* Appellants made a similar argument contending that the requirement that the Board render decisions within a reasonable time contained in 53 P.S. § 25057 [5] (applicable to cities of the second class) mandated a finding that decisions issued more than forty-five days after a hearing were *per se* unreasonable. This Court declined to so hold, stating:

> Quite simply, if the General Assembly had intended to apply the deemed approval provisions of the MPC to cities of the second class, it could have done so. Instead, it simply provided that decisions rendered by zoning boards of adjustments in cities of the second class are to be rendered 'within a reasonable time.'

*Id.,* 80 Pa.Commonwealth Ct. at 499–500, 471 A.2d at 1313. The *Tuckfelt* reasoning applies to the instant action: the General Assembly chose not to include the deemed approval provisions of the MPC in Section 8 of the Zoning Enabling Act and thus this Court may not impose such provisions here. The trial court's denial of the preliminary objections to the complaint in mandamus is therefore reversed and the preliminary objections are sustained.[6]

### III

No additional evidence was taken by the trial court on Randolph Vine's appeal of the Board decision; consequently this Court's scope of review is limited to a determination of whether the Board abused its discretion or committed an error of law. *Spargo v. Zoning Hearing Board of the Municipality of Bethel Park,* 128 Pa.Commonwealth Ct. 193, 563 A.2d 213 (1989). The Board abuses its discretion when its findings are not supported by substantial evidence. *Zoning Board of Adjustment v. Pasha,* 118 Pa. Commonwealth Ct. 190, 544 A.2d 1101 (1988).

---

5. Section 7 of the Act of March 31, 1927, P.L. 98, *as amended,* 53 P.S. § 25057.

6. Given this ruling, the other challenges to the trial court's ruling in the mandamus action need not be addressed.

■ The first argument presented is that the Board wrongfully found that Randolph Vine had failed to meet the requirements of *Petrosky v. Zoning Board of Upper Chichester Township*, 485 Pa. 501, 402 A.2d 1385 (1979) wherein the Supreme Court held that vested rights can be acquired in an erroneously issued building permit. In order to acquire such rights, the property owner must establish (1) due diligence in attempting to comply with the law; (2) good faith throughout the proceeding; (3) expenditure of substantial unrecoverable funds; (4) expiration of the period during which an appeal could have been taken from issuance of the permit; and (5) insufficiency of evidence that individual property owners or the public health, safety or welfare would be adversely affected by use of the permit. Randolph Vine argues that it has satisfied all of the *Petrosky* factors.

■ The Board found that Randolph Vine failed to satisfy the requirement of good faith, noting discrepancies between the plans submitted to secure permit no. 331154 and those submitted to secure the amended building permit. In particular, the Board focused on the change from a roof-mounted sign, seventy-eight feet from the ground and having an approximate cost of $40,000 to a pole-supported sign, ninety-five feet from the ground costing $150,000. Randolph Vine maintains that its submission of the revised drawings is indicative of its good faith and that the Board's Finding of Fact No. 12 that the Department "[e]rroneously issued Permit No. 11904 ... on a set of plans which did not reflect what the ZBA approved" lends support to its good faith argument. However, Randolph Vine concedes that even the revised drawings did not include two support beams and thus did not accurately reflect the sign as constructed.

The Supreme Court recognized in *Petrosky* that vested rights do not attach where "[t]he applicant deviates from that which has been approved by government officials." *Id.*, 485 Pa. at 508, 402 A.2d at 1398. The discrepancies indicated above constitute sufficient evidence to support the

Board's conclusion that Randolph Vine failed to demonstrate unsullied good faith.

## IV

Randolph Vine next argues that the Board erroneously concluded that the sign is not roof-mounted but rather free standing. Section 14–102(9)(j) of the Philadelphia Zoning and Planning Code defines a free standing sign as one supported by one or more upright columns or braces erected in or upon the ground. A roof sign is defined as a sign erected upon or above a roof or parapet wall of a building and which is supported by said building. Randolph Vine argues that even if it had not acquired vested rights in the amended building permit, it is entitled to continue its use because the sign as constructed squarely fits within the Philadelphia Zoning and Planning Code definition of a roof sign and that the Board committed an error of law in finding otherwise.

Randolph Vine conceded during the Board hearing that virtually all of the sign's weight is borne by the pylon pole and that the two crossbars were attached to the roof for steadying purposes. Further, the plans submitted with the application for the amended building permit made no reference to the support beams. No evidence was presented to the Board that the sign as constructed was supported by the roof and thus it correctly found that the sign was free standing within the meaning of Section 14–102(9)(j) of the Philadelphia Zoning and Planning Code.

## V

Finally, Randolph Vine argues that the Board erred in failing to find that it was entitled to a variance for the continued use of the sign arguing that sufficient evidence was presented to satisfy the factors listed in Section 14–1802 of the Philadelphia Zoning and Planning Code which sets forth criteria to be considered in granting a variance. Review of a request for a variance from the literal terms of a zoning ordinance must begin with the proposition that a

462

variance should be granted only in exceptional circumstances, and the burden of proving its need is a heavy one. *The Boulevard Land Corp. v. Zoning Board of Adjustment,* 8 Pa.Commonwealth Ct. 584, 303 A.2d 234 (1973). Inasmuch as Stait obtained a variance in April, 1985, it presumably presented evidence sufficient to convince the Board that the criteria listed in Section 14–1802 had been met. This presumption is underscored by the revelation that the City Planning Commission had opposed the April, 1985 variance, testifying that no hardship had been established. The Board, however, rejected the City Planning Commission's position and issued permit no. 331154.

■■■ There is no record concerning the reasons for the Board's decision to issue a variance for the roof-mounted sign, and further the Board failed to address the variance issue in its denial of Randolph Vine's appeal despite an agreement to hear testimony on this issue. It is not this Court's function to review the record and speculate upon the credibility and weight of the evidence before the finder of fact. *Markley v. Carlisle Zoning Hearing Board,* 106 Pa.Commonwealth Ct. 578, 527 A.2d 595 (1987). Consequently, there is no way for this Court to adequately review the variance issue presented by Randolph Vine. Accordingly, this case must be remanded to the Board with the directive to formulate findings of fact and conclusions of law as to Randolph Vine's request for a variance.

## ORDER

AND NOW, this 12th day of April, 1990, the orders of the Court of Common Pleas of Philadelphia County are reversed and the court is hereby ordered to remand the record herein to the Zoning Hearing Board of Adjustment of Philadelphia with instructions to formulate findings of facts and conclusions of law as to Randolph Vine's request for a variance.

Jurisdiction relinquished.